Next case before us is 19-8021 United States v. Dominguez. May it please the court, counsel. Grant Smith on behalf of Christopher Dominguez. Mr. Dominguez was told that if he went to trial and was found guilty he would face a mandatory minimum sentence of 60 years. Wishing to avoid this severe sentence, he decided to accept a plea agreement offered by the government for a 28-year sentence. The problem here is that Mr. Dominguez did not face a mandatory minimum sentence of 60 years. His decision to plead guilty was based on materially misinformed information. This court should reverse for two independent reasons. First, Mr. Dominguez's plea was not knowing and intelligently made. This court has been clear that in order to constitute an intelligent plea, it must represent a deliberate and intelligent choice between the available alternatives. As presented to Mr. Dominguez, his available alternatives were one, go to trial and face a mandatory minimum sentence of 60 years, or two, accept a plea agreement with the government for a 28-year sentence. The question is what are the relevant available alternatives? It doesn't necessarily follow, not every factor is going to be relevant to the plea decision that is going to be made. I mean, there are things that are not integrally involved in the plea, a la Padilla. Some things are, some things aren't. And so these were not to plead guilty to, right? Right. Okay. Well, what case do you have that would say that your knowledge of charges, the amount of magnitude of charges that are not charges that are integrally tied to what you plead guilty to, or more to the point, are not the charges you plead guilty to, can affect the voluntariness of your plea? The case that we rely on in our brief is United States v. Aguilera at the Fifth Circuit, where they found that when the defendant was misinformed as to charge conduct that was later dismissed, the defendant was bereft of the opportunity to intelligently weigh his options. And that decision makes sense because the relative value of a plea agreement is based on what you face if you go to trial. A defendant can't intelligently choose to enter into a plea agreement for three years unless he knows what the trial. That agreement might be good if you have a mandatory minimum of three years and a stat max of ten years, but it's not that good if there's a mandatory minimum of zero and a stat max of three. Oh, it's really not good? It's 76 months? Is that my recollection? That's what, that he was less than the low end of the guideline range by virtue of his plea, right? Well, first I would reject the notion... On the four charges that he pled guilty to, not including the, you know, the charges that the government dismissed, not including the Mexico that was not investigated. So there are a whole universe of things out there that were not, that were, that he was not held to account for in this plea agreement, right? I would reject the notion that there's any consideration at all about his guideline range. The question here is whether he intelligently chose between the available alternatives, and he couldn't have done that because he wasn't informed of the available alternatives. That begs the question of what are the alternatives? It is not clear that everything that is out there, the universe of things that can be considered, is going to be materially bear on, that's why I started this out with Padilla, materially bear on your decision to plead guilty. Now the Supreme Court took the position that that would, that in a situation where it is obvious that you will be deported or removed, that is intricately involved in your plea. It's not self-evident that that is the case here, and so what I'm asking you is, is Guerrero, I guess, your best case for saying why it is a relevant alternative? It's a relevant alternative additionally under the Supreme Court decision in Boykin v. Alabama, where they talk about an intelligent plea and say the defendant has to be informed of the the likely consequences, and they have to be informed of the applicable sentencing range. That includes both the mandatory minimum and the stack max. It's what he's, but within the range of what he's pleading guilty to, he was informed what the, what the relevant, what the relevant charges were, what the maximum was on the charges, what he was going to agree to in the guideline range. He was, he was informed of all of that. What he was not informed of is what's going to happen, so charges that he did not plead guilty to, that were not within the zone of what was, what he stood up and talked about in his plea colloquy. I would push back on that because of this. This isn't a case merely about omission. This is a case about an affirmative expression of what the mandatory minimum for him would be. The court told Mr. Dominguez that he's looking at a mandatory minimum sentence of 60 years. The actual applicable mandatory minimum sentence was 27 years. Let me ask you, what, does it, does it matter for your purposes whether in fact the, the first step back went into effect before pronouncement of sentence or after? I wouldn't concede the point that it went into effect after, but it isn't material to our, the outcome of this case, and here's why. Mr. Dominguez's trial was set for January 7th, 2019. This act was passed on December 21st, at what time we believe we know that it was passed about 10 o'clock Eastern Standard Time, but even assuming that it was an hour one way or the other, it just wasn't true that he was going to face a mandatory minimum sentence of 60 years if he went to trial on January 7th, 2019. That was just an incorrect statement of the law, and Mr. Dominguez elected to enter into this a plea, plea agreement by considering what the court told him was the applicable law and weighing that against the value and the benefit of this plea agreement. Therefore, it can't be considered an intelligent, deliberate choice between the available alternatives. No one ever told Mr. Dominguez what his actual alternatives were. Counsel, could I get you to talk about mutual mistake? Yes, in, in the opening brief, we just discussed how plea agreements are guided by contract principles, and to that end, this appears to be the case of a mutual mistake as to a material term of this plea agreement or this contract. The parties were operating under the assumption that he would receive a mandatory minimum sentence of 60 years if he went to trial. Therefore, the 28 year plea agreement was informed by that mandatory minimum. You didn't make a mutual mistake argument below, though, did you? No, and this is not an argument on its own. This is just saying why it makes sense that a defendant has to be properly informed of the applicable mandatory minimum, and that essentially it would give the government a windfall. We, we threatened you with this mandatory minimum sentence. You elected to enter into a plea based on that, and now we're going to hold you to that plea, even though we know after the fact that this threat was completely empty. This, this comes up in the context of a review of the court's refusal to allow him to withdraw the plea, right? Okay, well, part of that analysis, then, is going to turn on whether, whether it is to be accepted that he, in fact, would have withdrawn his plea, and, and why, given the, the nature of the plea, and given the nature of the deal that he received, and given the nature of the things that were left on the table and not pursued, is it, do we have a reasonable probability, I think is the standard that we're operating under, that, that we would believe that he would do that? I disagree that that's applicable as to his first claim. The reasonable standard, or the reasonable probability of a different outcome comes in for Mr. Dominguez's second claim. In effective assistance. As his eyes. Okay, well, then what is the standard, then, that we're going to judge the question of whether, well, I mean, we're deciding whether he would have withdrawn his plea, what is this, then tell me, what is the standard as you understand it? It's got to be turned on whether, in fact, the court can believe that he would have withdrawn his plea, that it's a fair reason to withdraw his plea, right? No, no, not at all. Okay, so fair and just reason, is that the standard? No, the standard here is whether it's a knowing plea, and if he can demonstrate that it's not a knowing and intelligent plea, the government would have to the two issues, but going to the knowing and voluntary, well, knowing and intelligent plea, I still need, all right, your best case, and Boykin is not going to cut it, I mean, that's general language, your best case close to these facts, then, is going to be this Guerrera case, right? Absolutely, yes. Okay, all right. In addition, it's no surprise that there is an absence of case law in this, and that if the law changes, courts most likely are going to allow a defendant to get out of this plea agreement. It was formed under terms that just weren't true, and those decisions aren't going to be appealed. No, well, what makes this case unique is not necessarily that. What makes this case unique is that he is being, he is pled guilty to, you know, this is not like, for example, Zhigo or, or in our, my old office, we used to debate how to pronounce that, but let's say Zhigo, okay? Yeah. That's not like this case. This case, we're not talking about the charges that were in front of him, the charges that the court, you know, gave him his Rule 11 on. We're talking about charges over there. We're talking about charges he didn't plead guilty to. We're talking about the effect of those charges. That's what makes this case different, and so what I'm trying to get at is why are those things even relevant? If the court gave him everything he was due here, knowing voluntary nature of the plea, knowing intelligent, I'm sorry, knowing intelligent nature of the plea, if the court gave him everything he was due within this box of the charges he was pleading guilty to, why is that stuff even matter? The Eighth Circuit case, Goodman, is particularly instructive on this point in that it says it's just because a district court complies with the Rule 11 colloquy requirements, it's not an absolute bar to a challenge to the plea. It's unknowing and involuntary. Well, the premise of my question is not that it is. The point is I'm trying to understand where on the scale of mattering being, you know, and that's why I go back to Padilla because Padilla made a point of saying the reason that we're willing to consider removal is because it is integral to this plea to these charges, the charges that were before the defendant. Okay? Well, we've got charges before this defendant. The defendant, well, let's assume for the moment, got everything he was entitled to in terms of disclosure of penalties, disclosure of everything necessary as it relates to those charges. The question then becomes why does anything else that goes on over here have the ability to impact the knowing and intelligent nature of his plea as to those charges? Two reasons. First, undoubtedly mandatory minimums and statutory maximums are important to the overall process and guide the defendant's decision. That's why they're informed at their arraignment. They're informed in the indictment of what penalties you're looking at if you proceed to go to trial. And the second answer to that is that if you look to GIGO, it says it has to be an intelligent choice between the available alternatives. You can't choose, you can't weigh those alternatives unless you know what they actually are. Yes, but you gave me a third pronunciation. I'll take that one too. But I mean, but the point is available alternatives within the context of that case meant available alternatives relative to the statutory charges that he faced. They did not have, they were not factually analogous to what we're talking about here. And when you talk about the court advising him as to the possible, I think at one point it was life, right, that he faced on the stacking charges. In this case, up to life. Okay, up to life. Well, the court did that in connection with an indictment in which that was true, right? And let me be clear. Do I understand it correctly? At the time that he had his Rule 11 colloquy, was there any discussion in the Rule 11 colloquy about the 60-year mandatory minimum that he was facing? No. All right. That's my point. In the other context, it was relevant to the court advising him of what he faced because he did face those charges. But when the court, when he's doing his Rule 11 colloquy, this is the little box, and the question is why does anything else get in that box? And that's what I'm trying to get from you, is to what is the persuasive reason to think, because the Supreme Court held a pretty hard line, had to be integral in Padilla to get into that box. So why does this get into the box? Just as a matter of fundamental fairness, which has to attach to plea bargaining process. You could think of a more egregious example where the government says, you're looking at a life, a mandatory minimum sentence of life. But here's a plea agreement. The defendant's going to elect to go to that plea agreement as long as it's lower than life. They could coerce and induce that plea based on material misinformation about the risks that would be imposed if they were found guilty. We're not talking about coercion though, right? We're talking about knowing and telling. This is knowing and telling. And that's why in GIGO that they have to intelligently weigh their available alternatives. Unless there's any questions about the IAC claim, I would reserve the remainder of my time for rebuttal. May it please the Court, Stuart Healy from the District of Wyoming for appellee. Your Honors, there were a number of cases cited by the court and by defense counsel. And I do want to say first, and to clarify, because I want to, and Judge Holmes, you beat me to this, but there was no discussion of the stacking in the Rule 11 colloquy. If there was any discussion of that at all, it would have been in his arraignment before the magistrate and we don't have any of that in the record. So the question is, was this a knowing plea? The district court in this case went through in great detail all of the requirements of Rule 11 and the defendant in great detail and very unequivocally stated that he understood them. He stated that it was, that he understood the charges, the plea agreement, the maximum sentences, which haven't changed incidentally. None of the maximum sentences changed under the First Step Act. The range of the sentences, the rights that he was giving up, there was no threats or coercions. And one thing that's very clear too, he made it, yes ma'am he said when he was asked if he believed that he had received competent advice of counsel. So in this case, what we have is a case that is completely outside of any of the cases that have been cited by the parties and that's because this kind of situation doesn't happen a lot. On the day that the defendant pled guilty, the law changed. Now we can quibble over whether it was an hour before or an hour after and it doesn't really matter, which Where do we draw the line? If we agree for a moment with the defendant, where do we draw the line? If the First Step Act had changed a week later, would he have been able to come to the court and say, I don't like this plea agreement anymore. I want to go to trial. Would he have been able to do that? The defendant was right though and calling, well defense lawyer was right in calling me on the notion of not conflating these two. If we're talking about the knowing and intelligent nature of the plea. At that time, being apprised of, is it a distinction with a difference I take it, that we're partly talking about, whether in fact the law had been changed at that moment or whether the law was changed two minutes down, well let's say three hours or a week down the road. Would that affect the knowing and intelligent nature of what went on? Right? That's the first issue. Yes. Okay. Well, on that issue, if in fact, as I understand it, the argument is he would have withdrawn right then. If it had changed, if the law was not what he understood it to be when he said, I do, on the plea, he would have walked away. That's what he's claiming now, Your Honor, but you cited Padilla on several occasions today. Padilla, one of the premises of Padilla in considering competent counsel is, would a decision to reject this plea agreement have been rational under the circumstances? As I said, I'm trying not to conflate these two. Are we talking about the knowing and intelligent nature of the plea or are we talking about the IAC claim? We're talking about the ineffective assistance of counsel claim right now because I think this part is important because the court raised this. Would a decision to reject this plea agreement have been rational under the circumstances? We know that his two co-defendants had sentenced, agreed to sentences of 35 years. He agreed to a sentence of 28 for the exact same conduct as his two co-defendants. Okay? Two 924Cs were dismissed. One, a 10-year consecutive sentence, putting aside stacking altogether. Two mandatory minimum sentences were dismissed under this plea agreement, one of 10 years and one of 7. The 7 is the New Mexico case. The court, as you noted, Judge Holmes, had to vary down 76 months from the low end of the guideline range just to get to this plea. That puts aside the 204 months he saved just on the consecutive 924Cs, not to mention the additional charges that he was facing in New Mexico that were important enough for him to include in the plea agreement to have assurances from the government that he wouldn't be pursued on an additional 924C and an additional bank robbery. And as the PSR noted, that case alone would have been another 324 months or something like that. So all of this under Padilla, Your Honors, it isn't rational now to believe that the defendant would all of a sudden say, I want to change my plea. There were certainly other considerations that came into the time between December 21st and February 4th when he changed his plea on December 21st and February 4th, including the fact that two co-conspirators who there was DNA evidence against to establish that they were at this particular pharmacy robbery in Cheyenne, Wyoming, that those two co-conspirators would no longer be sitting at the table with him. So certainly there were other factors that came into this decision all of a sudden to change his plea, which takes me back to where we draw the line. Certainly the law changed. And I do want to say this, too, and this is clear at Volume 595 at the motions hearing. It is not at all clear from the record that defense counsel didn't talk to the defendant about the First Step Act or the fact that it may change things down the line. The only thing that's clear from the record and defense counsel's argument to the court during that particular hearing was that he didn't talk in any great detail to the defendant about it and told him what he said he tells all of his clients, which is, look, if the law changes, the law changes. I have to talk to you about what the law is now. Well, I mean, is that really good enough? I mean, if you're sitting in a situation where the law is going to change on the day of sentencing, if the law changes, the law changes, and 60 years drop off, I mean, if we're focusing now on the IAC claim, I mean, really? I mean, why is it good enough to say, oh, I'm aware that there is this thing called the First Step Act, but, you know, let's not worry about that. The law is what the law is. Well, the law is going to change right away, and that's going to alleviate what would have been a fairly draconian stacking situation, exposure that he won't face now. You're telling me that competent counsel would not have been obliged to tell their client that? But, Judge Holmes, I'm not telling you that. I'm telling you that we don't know what Mr. Fleener told his client. I thought he said only in the record that he was aware of the First Step Act. Did he say he talked to him about it? He – well, unfortunately, that's a little unclear from the record at 95. What he says is, I don't want to go into too much detail about what I discussed with my client. But I will say that we – that I went back and looked through my notes to see what we talked about and what we didn't talk about. And I'll tell you, Your Honor, the same thing that I tell all of my clients. This is the law as it is now, which is what the court told the defendant. But I can't talk to you about what the law may be. But we can take that one further step. There's a reasonable inference to draw from that, too, which takes us back to this Padilla argument, right? That even under the 60-year mandatory minimum, which the court points out wasn't on the table at the change of plea and the court didn't advise the defendant about the 60 years, she only talked to him about what he was actually pleading to. But the reasonable inference is that even with that, this plea agreement – or without it – with or without it, this plea agreement was incredibly advantageous to the defendant. So right away, we're outside of ineffective assistance of counsel under Padilla. Well, perhaps. I mean, if the question is, would the defendant have – if we're focusing on the IAC claim and the notion of whether the defendant would have withdrawn, are you talking about the performance component of ineffective assistance or prejudice? I'm talking about prejudice under Padilla. And the prejudice being that this was such a good deal that he would not have withdrawn from it. Yes. Okay. But – and I can understand why you'd want to start with the IAC claim, but is it not in fact the case that, quite apart from whether he would have withdrawn from the deal once he knew about the First Step Act's effects on the plea, isn't it an entirely discrete inquiry as to whether at the time he said, I plead guilty, that was a knowing and intelligent plea? It is. It is. Okay. So talk to me about that. I will talk to you about that. And the most important consideration is an evaluation of the Rule 11 colloquy. And the reason why that's the most important consideration – and that's consistent throughout the circuits – the reason why that's the most important consideration is that if it isn't, we go back to the same issue that I started with. Where do we draw the line? If it's an hour after the law changes, a day after, two days, a week. We have to go to the Rule 11 colloquy. And Judge Holmes, your point about the fact that we weren't talking about stacked issues. The district court didn't advise about stacking. There wasn't improper advisement given to the defendant. The defendant was properly advised under Rule 11 of the maximums which didn't change prior to First Step Act and after First Step Act, and the minimums to which he pled, which were incredibly, again, advantageous to him. And there is no argument that this wasn't voluntary. And that's important to point out. No, no. I think that's taken off the table. But the point is that the word used is available alternatives keeps being used, the mantra thereof. And the question is, why isn't that an alternative he should have known about? I mean, in the context of pleading guilty. I mean, because quite apart from – in the end, I think you've accepted the premise – quite apart from whether he would walk away from the plea later. The point is, why wouldn't that so – and to use Padilla's word – why wouldn't that be so integral to his decision to plead guilty that he would need to know about that? Well, first, I don't think the record is clear that he didn't know something about it. Oh, we can't hang – how much can we hang on speculation about what his lawyer said he did or did not do in that situation? Exactly, Judge, which is why we have to go back to what the law is, what the case law says, that the most important consideration is the evaluation of the Rule 11 colloquy. And it's important to note that nothing in the appellant's brief or his argument today suggests that he thinks the court failed in any way to properly advise the defendant. Well, I guess, back to the question, why wouldn't that have a huge impact on somebody's I guess I need you to explain that more. Why is that a line-drawing problem? I mean, I guess are you saying there – he was properly informed at this point, and it's a line-drawing problem when we count the first step act as effective? Is that – No, no, Your Honor. I don't think – in terms of December 21st and when that law became law, when President Trump signed it or whether it was before the plea or after, I don't think that's a real important inquiry for the court. What I think – when I talk about the line, what I ask the court to consider is assuming the court says, all right, because the law changed on the day that the defendant entered his plea, and because the district court didn't, in its rule 11 colloquy, advise him of the stacking provisions and how the first step act could change that. Because let's remember, the district court was also unaware that the law changed. The government was unaware, and I can tell you that it may not have been on the record, but I was the government. I was unaware, and defense counsel was unaware, and presumably the defendant was unaware that it was changing on that day. So the line that I ask about is assuming the court says he should have known on that day because the law changed on that day, what happens when a defendant comes before this court in a year from now and says the law changed two weeks later, and under your decision in Dominguez, I think that I should have another bite at the apple because the law changed. That's my point. Does that – you're looking at me, it's like I didn't answer your question. But it still doesn't answer the question, I guess, why at that moment of sentencing, a defendant shouldn't be informed of the first step act? Well, I think that if the court is suggesting that the district court, any time there is legislation that could change the outcome of a plea agreement, then the district court's getting involved in plea agreements, and I don't think the district court can do that. I don't think the district court can do that, nor do I think the district court should be responsible, just like defense counsel and the government shouldn't have been necessarily responsible in this case, to be watching, as the appellant suggests, its smartphone every second to see if the law has changed at any point. I don't think that's reasonable either. And I do apologize for jumping back and forth between ineffective assistance of knowing guilty plea, but they're connected because this plea agreement under any – and I'll end with this, my time's about up – this plea agreement under any analysis was advantageous to the defendant. Thank you, your honors. I'll answer any other questions you may have. Just one point, in that the mandatory minimum was integral to Mr. Dominguez's decision, and also there is a reasonable probability that the outcome would have been different, and we know this because the record is very clear, that when counsel found out how this stacking provision, how the First Step Act impacted Mr. Dominguez's case, he went to Scott's Bluff and met with Mr. Dominguez. After telling him only about the change in 924C, Mr. Dominguez moved to withdraw his plea. How do we know that's all he told him? I mean, he – we – to the – to counsel's point, prosecution, part of the issue would have been he would have been in a joint trial with two other people who had more damning evidence against them than he did, and so now that evidence is off the table, so how do we know that? I'm out of time to answer your question. Please. The government's speculation about the advantages of the two defendants is not based in the record. As an officer of the court, Mr. Dominguez's counsel stated that he went to Scott's Bluff, he talked to him only about the First Step Act, and about that time, Mr. Dominguez moved to withdraw his plea. These stacking provisions were the driving force behind Mr. Dominguez's decision to enter into the plea agreement. Accordingly, we request that this court vacate and permit Mr. Dominguez to withdraw his plea. Thank you. Thank you, counsel, for your fine argument.